FILED
NOV 21 2008

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| BUTCH D. SMITH, JR.; BUTCH D. SMITH, SR., | ) ) ) |
| Plaintiffs, | ) Civil Case No. 07-515-KI ) |
| vs. | ) OPINION AND ORDER ) |
| PAT SHORT; MARSHA DAY; DAN DEHAVEN; RONALD MOREY, | ) ) ) |
| Defendants. | ) ) |

Michelle R. Burrows
618 NW Glisan Street, Suite 203
Portland, Oregon 97209

    Attorney for Plaintiffs

Page 1 - OPINION AND ORDER

Hardy Myers
Attorney General
Katharine Von Ter Stegge
Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, Oregon 97301-4700

    Attorneys for Defendants

KING, Judge:

Plaintiffs Butch D. Smith, Jr. ("Snow" Smith) and Butch D. Smith, Sr. ("Bovil" Smith) allege claims of unreasonable arrest, false imprisonment and malicious prosecution pursuant to 42 U.S.C. § 1983 and one common law tort claim for malicious prosecution. Plaintiffs assert their claims against Pat Shortt[1] and Dan DeHaven, both Oregon State Police officers, as well as Marsha Day and Ronald Morey. Plaintiffs' claims arise out of their arrest and the prosecution as a result of statements Day made to DeHaven. Morey has not been served, and Day is *pro se*. Before the court is the Motion for Summary Judgment (# 22) filed by Shortt and Dehaven ("State defendants").

## BACKGROUND

On September 19, 2004, a Subaru station wagon cut off a Saturn S.U.V. in the westbound lanes of I-84 in Morrow County.[2] The actions of the Subaru driver caused the driver of the

---

[1] Defendant's name is spelled incorrectly in the Complaint as "Short."

[2] Plaintiffs failed to submit a Concise Statement of Material Facts or a Response to Defendants' Concise Statement of Material Facts, in violation of Local Rule 56.1(b). Pursuant to Local Rule 56.1(f), the facts in defendants' Concise Statement of Material Facts are deemed admitted by plaintiffs. In order to resolve the State defendants' motion, I have included additional facts here that are supported by the record.

Page 2 - OPINION AND ORDER

S.U.V. to swerve to the left onto the gravel shoulder; the S.U.V. driver overcorrected to the right and flipped the S.U.V. two or three times injuring all the occupants.

The Oregon State Police investigated the accident, but learned nothing about the identity of the Subaru driver. The driver of the S.U.V. described the individuals in the Subaru as a white male driver and white female passenger. One of the passengers reported the driver was wearing a cowboy hat.

In December 2004, Day contacted the Oregon State Police and left a message for Shortt, who assigned DeHaven as the lead investigator. Day informed Shortt and DeHaven that she was a passenger in the Subaru. She told them Snow Smith was driving that day and that he caused the accident. The Subaru belonged to Snow Smith's parents. She also reported that after the accident Snow Smith pulled off the highway, hid under an overpass, and called his father to come pick them up. Snow Smith discarded his blue baseball cap that Day said he had been wearing at the time of the crash. After waiting three hours for Bovil Smith to arrive, the three of them disguised the car and drove the two cars down back roads for some time before getting back on the highway.

DeHaven did not question Snow Smith or Bovil Smith about Day's statements. Shortt located a blue baseball hat under the overpass described by Day. He contacted Day and asked for a description of the hat. Her description matched the hat Shortt found.

DeHaven did not think the witness' description of the Subaru driver as wearing a cowboy hat was important. He explains in his affidavit, "I did not believe the discrepancy established that Marsha Day was lying because the accident was very quick, took place at highway speeds, and all of the witnesses who observed it very likely would have been distressed at [the] time they

Page 3 - OPINION AND ORDER

made their observations." DeHaven Aff. ¶ 9.

Day told DeHaven that two weeks after the accident, Bovil Smith directed her to change the title of the Subaru.[3] DeHaven did not investigate how this was accomplished.

Day told DeHaven about her relationship with Snow Smith, reporting that he had been physically abusive. She also informed DeHaven that Snow Smith had taken her children to Tennessee.

DeHaven referred the matter to a Morrow County District Attorney. In February 2005, as a result of Day's and DeHaven's testimony, a grand jury indicted Snow Smith and his father on criminal charges in Morrow County. Plaintiffs were arrested by U.S. Marshalls in Tennessee on the Morrow County indictment warrants. Snow Smith was incarcerated from April 2005 to November 2005.

In July 2005, DeHaven interviewed Day again. Day reported for the first time that after the accident, Snow Smith not only called his father but he also called a "member of the Mexican mafia" in Portland named Speedy Sanchez. Day reported that Snow Smith not only tossed away the blue baseball cap he had been wearing but that they also hid a methamphetamine drug kit in a wall. She said they later retrieved the drug kit. Day reported that Snow Smith and Bovil Smith were involved in the manufacture and distribution of methamphetamine and transporting marijuana to Tennessee.

DeHaven listened to Snow Smith's telephone calls from prison and learned that he had

---

[3] Neither party explains exactly what happened. Apparently, Day changed the Subaru title and registration from Oregon to Idaho two weeks after the accident. I glean from DeHaven's deposition that Day changed the title and registration from Speedy's Auto Brokers and put it in the name of Bovil Smith and his wife. DeHaven testified that a Rachelle Sanchez confirmed she sold the car to Bovil Smith.

Page 4 - OPINION AND ORDER

been hunting in Northern Idaho with two other people on the day of the accident and that afterwards they all went to a casino. DeHaven did not interview those two individuals. He felt that Snow Smith "was leading them in what he wanted them to say and that the interviews would be uncredible[.]" DeHaven Dep. 116:2-3. DeHaven checked and confirmed that Snow Smith was not licensed to hunt in Oregon, Washington or Idaho. DeHaven told the district attorney about the purported alibi defense.

Day warned DeHaven and Shortt that her brother, Ronald Morey, may be identified by the Smiths' defense as a suspect in the hit and run. DeHaven attempted to obtain cell phone records from Morey with his consent, but Morey refused to give consent. DeHaven was not suspicious about Morey's unwillingness to cooperate and he did not subpoena the records. DeHaven sent an investigator to interview Morey, but never read the officer's report.

In November 2005, the Morrow County District Attorney learned from Bovil Smith's attorney that Bovil Smith had received a traffic citation the day of the accident, proving he was not at the overpass as Day reported. When DeHaven learned about the traffic citation, he spoke with Day who recanted a portion of her testimony. Although she continued to assert that Snow Smith was the driver of the Subaru, she reported that Bovil Smith was not involved in the incident. Instead, she reported that "Speedy Sanchez, even somebody else had actually " come to help Snow Smith. DeHaven Dep. at 164:19-20. It was DeHaven's understanding that she did not tell him the truth because she was scared of Speedy Sanchez and the Mexican mafia.

The District Attorney dismissed the indictments against Snow Smith and Bovil Smith shortly thereafter.

## LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the evidence is viewed in the light most favorable to the nonmoving party. Universal Health Services, Inc. v. Thompson, 363 F.3d 1013, 1019 (9th Cir. 2004).

## DISCUSSION

### I. Presumption that Arrest and Prosecution Cuts Off Officers' Liability

In their First Claim for Relief, plaintiffs allege their arrest was without probable cause and was objectively unreasonable. In their Second Claim for Relief, Snow Smith alleges that his continued detention lacked probable cause, was unreasonable, and violated his Fourth Amendment rights. In their Third Claim for Relief, plaintiffs allege that the prosecution of them was without probable cause in that it was based solely on statements made by Day, who they characterize as a biased and unreliable witness.

As to all three claims, because plaintiffs were arrested and prosecuted only after a Morrow County District Attorney evaluated the case and submitted it to a Grand Jury, the State defendants rely on the presumption that "[f]iling of a criminal complaint immunizes investigating officers . . . from damages suffered thereafter because it is presumed that the prosecutor filing the complaint exercised independent judgment in determining that probable cause for an accused's

arrest exists at that time." Smiddy v. Varney, 665 F.2d 261, 266 (9th Cir. 1981) ("Smiddy I").

The presumption may be rebutted "by showing, for example, that the prosecutor was pressured or caused by the investigating officers to act contrary to his independent judgment or that the investigating officers presented the prosecution with information known by them to be false." Blankenhorn v. City of Orange, 485 F.3d 463, 482 (9th Cir. 2007) (quoting Smiddy I at 266-67). To survive summary judgment, plaintiff must present more than "conclusory allegations." Sloman v. Tadlock, 21 F.3d 1462, 1474 (9th Cir.1994). For example, where the prosecutor relied on police reports and the reports themselves omitted important information or contained conflicting accounts, the jury could determine that the officers "procured the filing of the criminal complaint by making misrepresentations to the prosecuting attorney." Borunda v. Richmond, 885 F.2d 1384, 1390 (9th Cir. 1988); see also Barlow v. Ground, 943 F.2d 1132, 1137 (9th Cir. 1991) (presumption overcome where police omitted information from report and where independent witness corroborated plaintiff's account). A negligent police investigation is insufficient to rebut the presumption. Smiddy v. Varney, 803 F.2d 1469, 1472 (9th Cir. 1986) ("Smiddy II") ("[B]oth negligent investigations and nonnegligent investigations can result in reports to the prosecutor" and the prosecutor has the "duty to measure the facts . . . and decide whether they add up to probable cause to prosecute.").

Plaintiffs point to a litany of items that Shortt and DeHaven failed to investigate, but do not identify any omissions in the officers' reports on which the district attorney relied in submitting the matter to the Grand Jury in February 2005 and in subsequently arresting plaintiffs. Unlike Barlow and Borunda, plaintiffs point to no omissions in the officers' reports, no contradictory accounts, and no independent witnesses supporting plaintiffs' assertion that they

were not involved in the accident or subsequent cover-up. Plaintiffs do not claim the State defendants kept from the district attorney information relevant to Day's credibility, only that they failed to investigate such items. Similarly, plaintiffs do not claim the State defendants omitted information about Day's transferring the Subaru's title. The remaining issues–the July 2005 interview, the alibi defense, and the possibility that Ronald Morey was a suspect–all came long after the indictment was filed and are not relevant to a determination about whether the officers misrepresented the facts to the district attorney and whether these misrepresentations caused the district attorney to file the case and arrest the plaintiffs. As a result, plaintiffs have failed to rebut the presumption that the independent judgment of the district attorney cuts off the officers' liability for their arrest and prosecution.

Plaintiffs' Section 1983 claims for unlawful arrest, imprisonment and malicious prosecution are dismissed with prejudice.

## II. Third Claim for Relief: Due Process Violation

In their Third Claim for Relief, plaintiffs also allege that defendants violated plaintiffs' Fourteenth Amendment rights by failing to undertake a reasonable investigation and disclose exculpatory evidence. Plaintiffs' response to defendants' Motion for Summary Judgment makes it clear that this issue is the crux of their Complaint.

Failure to disclose or preserve evidence is a due process violation. Brady v. Maryland, 373 U.S. 83 (1963). To establish a Brady violation, plaintiffs must show they were deprived of favorable evidence material to the case. Stickler v. Greene, 527 U.S. 263, 281-82 (1999). Plaintiffs cannot recover civil damages from Shortt or DeHaven unless the State defendants acted in a way that is more than merely negligent. See Daniels v. Williams, 474 U.S. 327, 330 (1986)

Page 8 - OPINION AND ORDER

(due process clause "not implicated by a negligent act"). The Ninth Circuit has not provided a standard by which plaintiffs may establish a Section 1983 claim for failing to disclose evidence under Brady. Other courts have required some level of deliberate conduct. Villasana v. Wilhoit, 368 F.3d 976, 980 (8th Cir. 2004) (bad faith standard applies to due process claims for law enforcement officers who fail to disclose exculpatory evidence); McMillan v. Johnson, 88 F.3d 1554, 1567 (11th Cir. 1996) (not requiring bad faith); Jean v. Collins, 221 F.3d 656, 660 (4th Cir. 2000) (en banc) (affirming, by evenly divided court, that bad faith required).[4] It appears that plaintiffs must demonstrate the State defendants deliberately withheld exculpatory evidence. Walker v. County of Santa Clara, No. C-04-02211 RMW, 2007 WL 1201789, * 10 (N.D. Cal. Apr. 23, 2007); Tennison v. City and County of San Francisco, No. C 04-0574 CW, C 04-1643 CW, 2006 WL 733470, * 29 (N.D. Cal. Mar. 22, 2006).

Plaintiffs claim Shortt and DeHaven ignored or suppressed exculpatory evidence. Specifically, they did not interview either of the Smiths about the incident. In evaluating the credibility of the only source pointing to the Smiths, plaintiffs assert that the State defendants did nothing to confirm Day's credibility. With regard to her allegations of domestic abuse, they claim that the State defendants did not obtain the domestic relations file and did not speak to any witnesses in Tennessee. Furthermore, they did not investigate Day's methamphetamine addiction, abuse of alcohol, or affairs while she was with Snow Smith. DeHaven never asked Day why it took her three months to report the accident. They also argue that DeHaven should have investigated Day's transferring of the Subaru's title.

---

[4] In the criminal context, a Brady violation may be established irrespective of the good or bad faith of the prosecutors. Brady, 33 U.S. at 87.

Page 9 - OPINION AND ORDER

Additionally, in July 2005, Day elaborated on her first statements to DeHaven. She reported for the first time that while waiting for Bovil Smith at the overpass, Snow Smith called Speedy Sanchez.[5] She also reported that Sanchez supplied drugs to them. DeHaven did not investigate whether Sanchez was involved with drug dealing, and did not obtain either of the Smiths' cell phone records for that day.[6]

While monitoring Snow Smith's calls, DeHaven heard Smith's alibi defense, but did not interview the individuals with whom Smith allegedly went hunting that day.[7]

Plaintiffs also complain that although Day reported Snow Smith threw away his blue baseball cap, the only witness to remark on the issue said the driver was wearing a cowboy hat.

Plaintiffs assert that the State defendants did not sufficiently investigate Ronald Morey as a potential suspect in the accident. DeHaven sent an investigator to Idaho, after talking with the district attorney about it. After unsuccessfully attempting to obtain Morey's cell phone records with his consent, DeHaven did not press the matter. DeHaven did not read the investigator's report.

---

[5] Plaintiffs state that after Snow Smith's call to Speedy Sanchez, Sanchez arrived at the scene nearly four hours later. Pls.' Response at 34, 51. Plaintiffs do not supply a record citation in support of this statement. Instead, the record reflects that DeHaven learned in November 2005 that Speedy Sanchez "or even somebody else" had helped Day and Snow Smith after the accident. DeHaven Dep. 164:19-20.

[6] Day also reported that Smith had a drug kit in a wall. She explained they later retrieved the kit, which would explain why Shortt did not discover the kit when he retrieved the blue cap.

[7] Plaintiffs state that DeHaven also learned Bovil Smith had received a speeding ticket by listening to Snow Smith's phone calls. Pls.' Response at 35. Plaintiffs do not cite to any portion of the record in support of this statement. As far as I can tell, the record reflects that DeHaven first learned of Bovil Smith's traffic citation when the Morrow County District Attorney called him about it in November 2005.

Plaintiffs base their claim on the allegedly shoddy investigation carried out by Shortt and DeHaven and, with the exception of the July 2005 notes, do not point out what exculpatory evidence the State defendants failed to provide to the district attorney. DeHaven testified that the district attorney subpoenaed the phone company for the cell phone records. Similarly, the tapes of Snow Smith's calls from jail were all turned over to the district attorney. Plaintiffs do not say that Shortt or DeHaven withheld evidence about Day's possible motive for fingering Snow Smith; specifically, they do not allege that either officer withheld Day's statements about Snow Smith's physically abusing her or taking her children. There is no evidence either officer knew about Day's addictions or propensity to cheat on Snow Smith. Plaintiffs do not allege either officer withheld evidence about Day's changing the title of the Subaru two weeks after the accident. They did not hide evidence that the witness reported the driver was wearing a cowboy hat, not a blue baseball cap. Plaintiffs do not allege that either officer withheld information about Morey, or the report prepared by the investigative officer about Morey. In short, plaintiffs do not allege conduct that rises to the level of a constitutional violation. See Baker v. McCollan, 443 U.S. 137, 145-146 (1979) (officer not "required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent"); Devereaux v. Abbey, 263 F.3d 1070, 1075 (9th Cir. 2001) (en banc) (no constitutional right to have witnesses interviewed in particular way or have investigation carried out in certain way).

With regard to the July 2005 notes, DeHaven admits he did not provide them to the district attorney and admits that his reports did not contain everything he had in the notes. The notes reflect two changes in Day's story. The first change was that Day now reported that in

Page 11 - OPINION AND ORDER

addition to Snow Smith calling his father, he also called Speedy Sanchez. The other change to the story was that Smith hid a methamphetamine kit in a wall, which they later retrieved. She also provided information about Speedy Sanchez's drug activities.

DeHaven testified that he did not see Day's elaborations as a different version of the story; rather, it was "additional information." DeHaven Dep. 98:8. He also testified that he did not believe Day's adding detail to her story made her unbelievable: "She was becoming more trusting. She was willing to give me more information, because she wasn't concerned about it coming back to bite her[.]" DeHaven Dep. 148:15-17. He did not believe the detail about hiding the drug paraphernalia and going back to get it was relevant to the accident, so he did not include it in a report to the district attorney.

Viewing the facts in the light most favorable to plaintiffs, the evidence is material as it was relevant to Day's credibility. Her statements about Sanchez are related to her later partial recantation of Bovil Smith's involvement and could have alerted the district attorney and defense that the story might be different. It arguably puts her actions in changing the title and registration of the Subaru in a different light. Additionally, DeHaven's failure to disclose these facts could be viewed as deliberate, as opposed to negligent, because he testified that he did not think the information was relevant. I deny the State defendants' Motion for Summary Judgment on this claim.

Since plaintiffs do not allege that Shortt withheld exculpatory evidence, that he knew about DeHaven's decision to keep the evidence, or that he failed to adequately supervise DeHaven, all claims against him must be dismissed. See Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988) (for individual liability, plaintiff must allege defendant personally participated in the

Page 12 - OPINION AND ORDER

constitutional violation, knew about it and failed to prevent it, or failed to supervise personnel).

III.   Qualified Immunity

The Supreme Court formulated the following objective qualified immunity standard:

> [G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The qualified immunity defense protects all government officials except those who are "plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). A ruling on the defense should be made early in the proceedings so that the costs and expenses of trial are avoided if the defense is dispositive. Saucier v. Katz, 533 U.S. 194, 200 (2001).

Courts use a three-step test to determine if a defendant is entitled to qualified immunity on a federal constitutional claim. First, the court determines if the facts alleged, viewed in the light most favorable to the plaintiff, demonstrate that the defendant's conduct violated a constitutional right. Brown v. Li, 308 F.3d 939, 946-47 (9th Cir. 2002), cert. denied, 538 U.S. 908 (2003) (relying on Saucier). If the facts show a constitutional violation, the court decides if the constitutional right at stake was clearly established at the time of the alleged violation. If so, the final inquiry is whether an objectively reasonable government actor would have known that his conduct violated the plaintiff's constitutional right. Id. at 947. Plaintiff has the burden of proving that a right is clearly established. Sorrels v. McKee, 290 F.3d 965, 969 (9th Cir. 2002).

I have determined above that, viewing the facts in the light most favorable to plaintiffs, plaintiffs have raised a material issue of fact as to whether DeHaven violated their constitutional

rights. The constitutional right to material and exculpatory evidence was clearly established at the time of DeHaven's actions. Brady, 373 U.S. 83. Neither party sufficiently briefed the question whether an objectively reasonable government actor would know that the information Day reported in her July 2005 interview was material and should have been disclosed to the district attorney. As a result, I deny the State defendants' motion for summary judgment on this issue, with leave to renew.

IV.     Fourth Claim: Common Law Malicious Prosecution

Plaintiffs allege a common law malicious prosecution claim. Specifically, plaintiffs allege that the State defendants prosecuted them without probable cause.

The State defendants argue that although plaintiffs name as defendants the individual Oregon State Police officers, as opposed to the State of Oregon, pursuant to the Oregon Tort Claims Act the claims are deemed to be brought against the public body because the police officers were acting within the scope of their employment. See ORS 30.265 ("[t]he sole cause of action for any tort of officers, employees or agents of a public body acting within the scope of their employment or duties and eligible for representation and indemnification . . . shall be an action against the public body only. . . . [O]n appropriate motion the public body shall be substituted as the only defendant."); Estate of Pond v. Oregon, 322 F. Supp. 2d 1161, 1165 (D. Or. 2004) (State notes that OTCA "requires that the public body be substituted for state employees who are individually named as defendants in a tort claim.").

Plaintiffs do not dispute that Short and Dehaven were acting within the scope of their employment, and all the evidence indicates they were. Plaintiffs do not dispute that Short and Dehaven are eligible for "representation and indemnification," and the evidence indicates they

Page 14 - OPINION AND ORDER

are.

Even though the Oregon Tort Claims Act is a waiver of sovereign immunity, it is not a waiver of Eleventh Amendment immunity. Estate of Pond, 322 F. Supp. 2d at 1165. The Eleventh Amendment bars a citizen from bringing suit against his own state in federal court. Micomonaco v. State of Washington, 45 F.3d 316, 319 (9th Cir. 1995).

Given that the State of Oregon is substituted for the two police officers, and that the Eleventh Amendment bars this claim in federal court, I dismiss this claim without prejudice against the State defendants.

Plaintiffs maintain this claim against Day.

V.      Section 1983 Claims Against Day

Plaintiffs must prove that all the defendants acted under color of state law to establish a violation of section 1983. "Private persons, jointly engaged with state officials in the challenged action, are acting under color of state law if they willfully participate in joint action with state officials to deprive others of constitutional rights." United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540 (9th Cir. 1989).

Simply complaining to police does not make a private party a government actor. Collins v. Womancare, 878 F.2d 1145, 1155 (9th Cir. 1989). The only remaining Section 1983 claim is against DeHaven for failing to disclose exculpatory material. Plaintiffs do not set forth any facts from which Day could be said to have acted jointly with DeHaven in that constitutional violation. As a result, all Section 1983 claims against Day are dismissed with prejudice.

VI.     Summary

Plaintiffs' First, Second and a portion of the Third Claim for Relief are dismissed with

Page 15 - OPINION AND ORDER

prejudice as to the State defendants and Day. Plaintiffs' Third Claim for Relief is dismissed with prejudice as to Shortt. Additionally, plaintiffs' Fourth Claim for Relief is dismissed as to Shortt and DeHaven without prejudice. Plaintiffs' common law malicious prosecution claim (Fourth Claim for Relief) against Day may proceed, as may the Third Claim for Relief against DeHaven for failing to produce exculpatory evidence.

## CONCLUSION

For the foregoing reasons, the State defendants' Motion for Summary Judgment (#22) is denied in part and granted in part.

Dated this 21 day of November, 2008.

Garr M. King
United States District Judge