UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

BUTCH D. SMITH, JR., and BUTCH D. SMITH, SR.,

        Plaintiffs,

v.

PAT SHORT, MARSHA DAY, DAN DEHAVEN, and RONALD MOREY,

        Defendants.

CV 07-515-KI

OPINION AND ORDER

KING, Judge:

    Before the court is Defendant Dan DeHaven's Second Motion (doc. 52) for Summary Judgment. For the reasons that follow, I GRANT the motion.

PAGE 1 - OPINION AND ORDER

## Background[1]

On September 19, 2004, a Subaru station wagon "cut off" a Saturn S.U.V. on I-84 in Morrow County, Oregon, causing the Saturn to swerve onto the gravel shoulder of the highway. The driver of the Saturn overcorrected to the right and flipped the vehicle, injuring all of the occupants. The driver of the Subaru did not stop at the scene. The Oregon State Police investigated the accident, but were unable to locate the Subaru or the driver.

In December 2004, Marsha Day contacted the Oregon State Police. She told Officer Dan DeHaven that she was a passenger in the Subaru on the day of the accident and that the driver, Butch D. Smith, Jr. ("Snow Smith"), caused the accident. She also said that after the accident, Snow Smith pulled off of the highway, hid under an overpass, and called his father, Butch D. Smith, Sr. ("Bovil Smith"), to pick them up. Day said that Snow Smith discarded a blue baseball cap under the overpass, and that after waiting three hours for Bovil Smith to arrive at the overpass, the three of them disguised the Subaru and returned to the highway. Day also told DeHaven that two weeks after the accident, Bovil Smith instructed her to change the title of the Subaru to avoid detection. Officer Pat Shortt[2] later recovered the blue baseball cap under the overpass described by Day, but neither officer questioned the Smiths about Day's statements.

In February 2005, a Morrow County grand jury indicted Snow and Bovil Smith on criminal charges based on Day's testimony and DeHaven's investigation. Snow and Bovil Smith were arrested by U.S. Marshals in Tennessee. Snow Smith was incarcerated from April 2005

---

[1]This Opinion and Order incorporates the factual background set forth in the court's November 21, 2008 Opinion and Order. See Smith v. Short, No. CV 07-515-KI, Opinion and Order at 2-5 (D. Or. Nov. 21, 2008) (doc. 51).

[2]Defendant Pat Shortt's name is spelled incorrectly in the Complaint as "Short."

PAGE 2 - OPINION AND ORDER

through November 2005.

In July 2005, DeHaven interviewed Day again about the accident. For the first time, Day reported that after the accident, Snow Smith not only called his father, but also called "a member of the Mexican mafia" in Portland named Speedy Sanchez. Day also reported for the first time that Snow Smith hid a methamphetamine drug kit in the wall under the overpass, and that both Snow and Bovil Smith were involved in the manufacture and distribution of methamphetamine.

In November 2005, the Morrow County District Attorney learned that Bovil Smith had received a traffic citation on the day of the accident, proving that he could not be at the overpass as Day reported. When DeHaven spoke with Day about this new information, Day recanted several portions of her testimony. She continued to assert that Snow Smith was the driver of the Subaru, but admitted that Bovil Smith had not been involved in the incident. Shortly thereafter, Morrow County District Attorney David Allen dismissed the indictment against the Smiths.

On April 6, 2007, Snow and Bovil Smith filed this civil rights action against Marsha Day, Ronald Morey, and Oregon State Police Officers Pat Shortt and Dan DeHaven under 42 U.S.C. § 1983, alleging claims of unreasonable arrest, false imprisonment, and malicious prosecution. Plaintiffs also asserted one common law tort claim for malicious prosecution. Officers Shortt and DeHaven moved for summary judgment on all claims.

On November 21, 2008, I issued an Opinion and Order dismissing all of Plaintiffs' claims against Officers Shortt and DeHaven, with the exception of a portion of Plaintiffs' Section 1983 Due Process claim against DeHaven for malicious prosecution. That claim arises from DeHaven's alleged failure to provide the district attorney with potentially exculpatory notes from his July 2005 conversation with Marsha Day. In my November 21, 2008 Opinion and Order, I

PAGE 3 - OPINION AND ORDER

found that the July 2005 notes reflect changes to Day's story that were relevant to her credibility, and "could have alerted the district attorney and defense that the story might be different." Opinion and Order, at 11-12. Based on DeHaven's deposition testimony that he did not "believe" he gave his handwritten July 2005 notes to the district attorney and that his formal report did not contain everything he had in the notes, I found that there was a genuine issue of fact as to whether DeHaven deliberately withheld exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83 (1963).

DeHaven now moves to dismiss Plaintiffs' remaining Due Process claim based on the Affidavit of former Morrow County District Attorney David Allen, who handled the indictment and criminal prosecution of Butch and Bovil Smith. Allen avers that although he cannot recall exactly when he received a copy of DeHaven's July 2005 notes, he is certain that he received a copy of the notes while the criminal charges against Plaintiffs were still pending. Aff. of David Allen, at 2. DeHaven argues that Plaintiffs cannot prove a Brady violation because (1) Allen's unrebutted affidavit establishes that the prosecutor did, in fact, receive a copy of the July 2005 notes while the charges against Plaintiffs were still pending, and (2) Plaintiffs now concede that their criminal defense attorneys received copies of the notes before the charges were dismissed.[3]

---

[3] On June 11, 2009, Plaintiffs filed a Motion to Amend by Interlineation Plaintiffs' Memorandum and Declaration in Response to Second Motion for Summary Judgment (doc. 88). In so doing, Plaintiffs moved to strike several portions of their Response to the Second Motion for Summary Judgment (doc. 63), and the supporting Declaration of Michelle Burrows (doc. 62). Briefly, Plaintiffs have withdrawn their allegations that in response to their third-party subpoenas, neither the Morrow County prosecutor, nor the criminal defense attorneys provided Plaintiffs with copies of DeHaven's July 2005 notes. Plaintiffs also concede, "[t]he notes of the 2005 July interview with Day were in the files of John Ballard and Dean Gushwa [Plaintiffs' criminal defense attorneys] . . . . Those notes appear to have been faxed to the defense attorneys sometime in September or October 2005." Pls.' Mot. to Amend by Interlineation, at 3. On July 17, 2009, I granted Plaintiffs' Motion to Amend (doc. 91).

PAGE 4 - OPINION AND ORDER

## Legal Standards

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party must demonstrate an absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A fact is material if it could affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Once the moving party shows the absence of an issue of material fact, the non-moving party must go beyond the pleadings and designate specific facts showing a genuine issue for trial. Celotex, 477 U.S. at 324. A scintilla of evidence, or evidence that is merely colorable or not significantly probative, does not present a genuine issue of material fact. United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1542 (9th Cir. 1989).

In evaluating a motion for summary judgment, the court must view all reasonable inferences in favor of the nonmoving party. Liberty Lobby, 477 U.S. at 255. Summary judgment is not appropriate where the record would allow a reasonable trier of fact to find for the nonmoving party. United States v. $69,292.00 in U.S. Currency, 62 F.3d 1161, 1166 (9th Cir. 1995). Conversely, summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 323.

## Discussion

In their only remaining claim against DeHaven, Plaintiffs allege that he violated their Due Process rights by failing to disclose potentially exculpatory notes from his July 2005 conversation with Marsha Day, in violation of Brady v. Maryland, 373 U.S. 83 (1963). To

PAGE 5 - OPINION AND ORDER

establish a Brady violation, Plaintiffs must show that the government "fail[ed] to disclose evidence materially favorable to the accused." Youngblood v. West Virginia, 547 U.S. 867, 869 (2008). The government's obligation under Brady "extends to impeachment as well as exculpatory evidence, . . . and Brady suppression occurs when the government fails to turn over even evidence that is known only to police investigators and not the prosecutor." Id. at 869-70 (quotations omitted). In other words, an officer violates Brady when the officer possesses exculpatory or impeachment evidence that is not provided to the prosecutor.

Here, Plaintiffs' Due Process claim fails because the evidence demonstrates that DeHaven did not possess exculpatory evidence "known only to police investigators and not the prosecutor." Id. Although DeHaven testified in his deposition that he did not "believe" that he gave the prosecutor a copy of his July 2005 notes, former Morrow County District Attorney David Allen, the prosecutor who indicted both Plaintiffs, submitted a sworn statement that he did in fact receive a copy of the July 2005 notes while the criminal cases against Plaintiffs were still pending. Plaintiffs have failed to proffer any evidence to contradict Allen's sworn statement. That Allen does not recall exactly when, or how he acquired the notes does not raise a genuine issue of fact for trial. So long as the prosecutor received DeHaven's July 2005 notes while the criminal charges against Plaintiffs were still pending, no Brady violation can be attributed to DeHaven even though he may not have personally delivered the notes to the prosecutor.

Further, Plaintiffs now concede that their former defense attorneys actually received a copy of DeHaven's July 2005 notes sometime in September or October of 2005, prior to the dismissal of the criminal charges in November 2005. As such, Plaintiffs cannot prove that the government failed to disclose DeHaven's potentially exculpatory July 2005 notes. Plaintiffs'

PAGE 6 - OPINION AND ORDER

admission makes clear that no Brady violation occurred.

Plaintiff's argument that DeHaven omitted changes to Day's story from his July 2005 notes is not supported by any evidence in the record, and appears to be based on a misreading of the court's November 21, 2008 Opinion and Order. There, I found that DeHaven admitted that his formal reports to the prosecutor "did not contain everything he had in the notes." Opinion and Order, at 11-12. I did not find, as Plaintiffs' now suggest, that DeHaven "<u>failed to include</u> within his notes everything the witness told him including some very serious exculpatory information . . . ." Pls.' Mem. in Opp., at 6-7 (emphasis in original). Although DeHaven acknowledged that his formal "reports did not contain everything he had in the notes," there is simply no evidence that he omitted exculpatory or impeachment evidence obtained during his July 2005 conversation with Day from his notes. Plaintiffs' speculation to the contrary is not sufficient to create a genuine issue of fact. Because Plaintiffs have failed to make a showing sufficient to establish the existence of an essential element of their Due Process claim (*i.e.*, that the government deprived them of materially favorable evidence), the claim must be dismissed.

## Conclusion

For the reasons set forth above, Defendant Dan DeHaven's Second Motion (doc. 52) for Summary Judgment is GRANTED.

IT IS SO ORDERED.

DATED this 17th day of July, 2009.

/s/ Garr M. King
Garr M. King
United States District Court Judge

PAGE 7 - OPINION AND ORDER